UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § | NO. EP-16-CR-0693-DB(1) |
| | § § | |
| DAMON MURPHY | § § | |

**DEFENDANT MURPHY'S MOTION FOR SEVERANCE**

TO THE HONORABLE DAVID BRIONES, SENIOR DISTRICT JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

COMES NOW Defendant Damon Murphy, by and through undersigned counsel, and files this Motion for Severance wherein he asks the Court to sever Counts 4, 5 and 6 from the trial of Counts 1, 2 and 3, and to sever his trial from the trial of his co-defendants pursuant to Federal Rules of Criminal Procedure 8 and 14, respectfully showing as follows:

### I.   PROCEDURAL HISTORY

On April 20, 2016, the Grand Jury indicted Mr. Murphy and five co-defendants in a six-count indictment. (ECF No. 1.) Count 1 charges Defendants Damon Murphy, James Anderson, John Tanner and Mark Tegmeyer with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Count 2 charges Damon Murphy, James Anderson, John Tanner and Mark Tegmeyer with conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1349 and 1341. Count 3 charges Damon Murphy, James Anderson, John Tanner and Mark Tegmeyer with mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 2. Count 4 charges John Tanner, Mark Tegmeyer, Diane Thomas and Nancy Love with conspiracy to retaliate against a witness in violation of 18 U.S.C. §§ 1513(e) and 371. Count 5 charges Nancy Love with False

Declaration before a Grand Jury in violation of 18 U.S.C. § 1623. Count 6 charges James Anderson with making material false statements to a U.S. government agency in violation of 18 U.S.C. § 1001 (a)(2). Damon Murphy is not named in Counts 4, 5 and 6. The case is set for trial August 15, 2016.

## II. RELEVANT BACKGROUND

Counts 1, 2 and 3 of the indictment ("the fraud counts") charge Damon Murphy, James Anderson, John Tanner and Mark Tegmeyer with conspiring to defraud the United States and commit mail fraud by reclassifying students and taking other actions contrary to state and federal rules in order to meet No Child Left Behind ("NCLB") accountability standards. (ECF No. 1 at 1-13.) The timeframe for these alleged acts begins on or about February 1, 2006, and continues to on or about September 30, 2013. Diane Thomas and Nancy Love are not named in the fraud counts.

Count 4 of the indictment charges John Tanner, Mark Tegmeyer, Diane Thomas and Nancy Love with conspiracy to retaliate against a witness in violation of 18 U.S.C. §§ 1513(e) and 371. Damon Murphy is not charged in Count 4 of the indictment. According to the indictment, the conduct that gave rise to this charge began in the Spring of 2012. (Indict., ECF No. 1 at 14.) At that time, Damon Murphy was the Superintendent for the Canutillo Independent School District and had been since February of 2010.

The indictment at pages 14 and 15 alleges the following:

In August of 2012, Teacher A and Teacher B provided information to the FBI concerning conduct occurring at Austin High School.

In January of 2013, Diane Thomas instructed employees of Austin High School to "fudge" student attendance numbers to make it appear that Austin had zero projected student enrollment in

the classes to be taught by Teacher A and Teacher B.  Diane Thomas told two counselors to curtail enrollment in Teacher A's classes because Teacher A was "the star witness for the FBI against John Tanner."

In February of 2013 John Tanner told EPISD Human Resources investigators that he had given Austin High School Counselors a directive to remove students from the list for Teachers A's classes pursuant to a directive from Needs Assessment that positions at Austin High School had to be cut.

In March of 2013, Diane Thomas emailed the Austin High School Comparative Report for inclusion in the Austin High School Needs Assessment package, which indicated that there was no student interest in a course taught by Teacher A.

In August of 2013, Nancy Love, falsely reported to EPISD police that a recent Austin High School graduate wanted to speak with the police to discuss pressing criminal charges against Teacher B.

In August of 2013, Mark Tegmeyer instructed a recent Austin High School graduate that he had researched the criminal statute of limitations on a 2011 incident concerning Teacher B and that since the statute was two years, it had not run yet.

In August of 2013, Mark Tegmeyer told a recent Austin High School graduate that Dr. Tanner had been removed because Teacher A and B were teaming up with counselors to make false accusations against Dr. Tanner.

In August of 2013, Mark Tegmeyer met with the recent Austin High School graduate and told him not to tell an EPISD police officer that he had been coached or encouraged by Nancy Love or the him to press criminal charges against Teacher B.

In August of 2013, at Cabo Joe's restaurant in El Paso, Mark Tegmeyer and Nancy Love coached the recent Austin High School graduate to lie to EPISD police regarding his previous declination of charges against Teacher B.

Count 5 of the indictment charges Nancy Love with False Declaration before a Grand Jury in violation of 18 U.S.C. § 1623. Damon Murphy is not charged in Count 5 of the indictment. According to the indictment, the conduct that gave rise to this charge began in September of 2013. (ECF No. 1 at 15-16.) Damon Murphy at that time was the Superintendent for the Canutillo Independent School District and had been since February of 2010.

According to the indictment, Nancy Love knowingly made a false material declaration to a Grand Jury concerning her involvement in an incident with a recent Austin High School graduate whom she is alleged to have recruited to press charges against Teacher B.   (ECF No. 1 at 16.) These charges would have prevented Teacher B from future employment at Austin High School, it would have injured the reputation of Teacher B and discredited Teacher B as a cooperator and witness in a pending federal investigation involving John Tanner.

Count 6 of the indictment charges James Anderson with making material false statements to a U.S. Government Agency in violation of 18 U.S.C. § 1001(a)(2). Damon Murphy is not charged in Count 6 of the indictment. According to the indictment, the conduct that gave rise to this charge began in August of 2012. (ECF No. 1 at 16-17.) At that time, Damon Murphy was the Superintendent for the Canutillo Independent School District and had been since February of 2010.

According to the indictment, James Anderson allegedly willfully made a false statement to the FBI, stating he had been angered by the actions of a former EPISD administrator, which caused him to make a complaint to the EPISD Police against a high school administrator for engaging in

4

criminal misconduct, and further told the agents that the EPISD Police officer refused to accept the complaint. (ECF No. 1 at 17.)

### III. ARGUMENT

The joinder of the conspiracy to retaliate against a witness, false declaration before a Grand Jury and making material false statements to a U.S. Government agency to the fraud counts is improper under Federal Rule of Criminal Procedure 8. Accordingly, Counts 4 through 6 should be dismissed without prejudice. Additionally, Mr. Murphy requests a separate trial from his co-defendants because joinder at trial will prejudice him. *See* FED. R. CRIM. P. 14.

#### A. The Counts 4, 5 and 6 Must Be Severed Pursuant to Rule 8

Rule 8 allows an indictment to "charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Not all defendants must be charged in each count for joinder to be proper. *Id.* However, the indictment must allege "'a series of acts unified by substantial identity of facts or participants.'" *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (quoting *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. Unit B 1981), *overruled on other grounds, United States v. Lane*, 474 U.S. 438 (1986)).

A court determines whether the "same series" requirement for proper joinder is fulfilled "'by examining the relatedness of the facts underlying each offense.'" *Id.* (quoting *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985)). This inquiry is according to the allegations in the indictment. *Id.* "'When the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper.'" *Id.* (quoting *Harrelson*, 754 F.2d at 1176). If there is not a substantial identity of facts or

participants between the offenses, "'there is no 'series' of facts under Rule 8(b).'" *Id.* (quoting *Harrelson*, 754 F.2d at 1177).

Joinder of Counts 4, 5 and 6 to the fraud counts fails the "same series" test because proof of the fraud counts is not necessary to establish the offenses charged in Counts 4, 5 or 6.[1] The overt acts alleged in Count 4 do not describe the alleged fraud that the FBI was investigating. (ECF No. 1 at 14-15.) They simply refer to an "FBI federal criminal investigation investigation." (*Id.* at 14.) Indeed, proof of an *investigation*—not of the alleged underlying acts triggering that investigation—would be sufficient to prove the alleged conspiracy to retaliate against a witness. *See* (*id.* at 14) (alleging that the retaliation was because Teachers A and B "had provided and were providing truthful information to agents of the [FBI] . . . concerning the commission of certain federal crimes); 18 U.S.C. § 1513(e).[2]

Count 5 mentions that the grand jury proceeding, during which Nancy Love allegedly made a false material declaration, related to "a federal investigation of conduct occurring at EPISD, including fraud against the government, wire fraud, mail fraud and retaliation against witnesses[.]" (Indict., ECF No. 1 at 16.) However, proof of such a grand jury proceeding does not necessitate proof of the underlying alleged fraud, which is the subject of the fraud counts. Rather, the elements of the charged offense, 18 U.S.C. § 1623, are that Nancy Love made a statement under oath before

---

[1] In contrast, the Fifth Circuit upheld the joinder in *McRae* because the charges in that indictment built upon each other, finding that the government would have to establish the shooting alleged in the first counts in order to establish the other counts. 702 F.3d at 821. While the fraud counts here may have been the catalyst for the events that followed, *see id.*, those charged offenses can be prosecuted without establishing that the fraud actually occurred.

[2] Section 1513(e) provides:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

6

the grand jury, that the statement was false, that Nancy Love knew it was false when she made it, and that the false statement was material to the grand jury's inquiry. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.69 (2015). According to the indictment, the alleged false statement—regarding whether or not an Austin High School graduate sought Nancy Love's help to press charges against Teacher B—is related to the retaliation charged in Count 4, not the fraud counts. Evidence relating to the fraud counts is not a necessary predicate to Charge 5.

Count 6, which charges James Anderson with making a false statement to FBI agents on August 20, 2012, incorporates the overt acts alleged in Count 1 and the scheme and artifice to defraud alleged in Count 2, as well as the over acts alleged in Count 4. (ECF No. 1 at 16-17.) The actual alleged false statement, however, is not dependent upon the introduction of evidence related to the fraud counts. The elements of the charged offense, 18 U.S.C. § 1001(a)(2), are that Anderson made a false statement to the FBI regarding a matter within its jurisdiction, that Anderson knew the statement was false, that the statement was material, and that Anderson made the false statement for the purpose of misleading the FBI. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.45 (2015). Count 6 alleges that Anderson, in order to mislead the FBI and impede the government from learning that he and others engaged in unlawful conduct, Anderson told FBI agents "that he had been angered by the actions of a former EPISD administrator, which caused him to make a complaint to the EPISD Police against a high school administrator for engaging in criminal misconduct," and that "the EPISD Police officer refused to accept the complaint." (*Id.* at 17.) While Count 6 comes closer than Counts 4 and 5 to involving the "same series" of acts as the fraud counts, it still is not "so closely connected that proof of such facts is *necessary* to establish each offense." *Harrelson*, 754 F.2d at 1176.

Furthermore, Counts 4, 5 and 6 are remote in time from the alleged overt acts supporting Count 1. The latest overt act supporting Count 1 allegedly occurred in June of 2012 when John Tanner allegedly caused the removal of 418 "no credit" codes from the records of Austin High School students. (ECF No. 1 at 7.) The earliest overt act supporting Count 4 was in January of 2013.[3] (*Id.* at 14.) James Anderson's alleged false statement occurred on August 20, 2012, and Nancy Love's alleged false declaration occurred on September 26, 2013. (*Id.* at 16-17.) Furthermore, all of the alleged acts in Counts 4 through 6 occurred after Damon Murphy was no longer employed by EPISD and relate to allegations regarding co-defendants' actions after the FBI began its investigation.

Accordingly, the Court should dismiss Counts 4, 5 and 6 without prejudice because they are improperly joined with the fraud counts.

### B. The Counts Must Be Severed Pursuant to Rule 14

Rule 14 allows separate trials of counts or any other relief that justice requires "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." FED. R. CRIM. P. 14. A court "should grant a severance if jurors in a joint trial may not be able to determine the culpability of a defendant fairly, impartially and solely on the basis of evidence relevant to the individual defendant." *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978). The court "must balance the possible prejudice to the defendants against the government's interest in judicial economy and must consider the ways in which it can lessen the prejudice by other means." *Id.*

Mr. Murphy requests that his trial be separated from that of his co-defendants for two reasons.

---

[3] The indictment alleges that pre-registration forms were collected in the Spring semester of 2012 and that Teachers A and B provided information to the FBI on August 28, 2012, but those were not actions taken by any of the defendants toward relation. (Indict. ECF No. 1 at 14.)

8

*1. A Joint Trial Could Threaten Mr. Murphy's Right of Confrontation (*Bruton*)*

First, a joint trial threatens Mr. Murphy's ability to preserve and exercise his right to confront and cross-examine witnesses. *See Bruton v. United States*, 391 U.S. 123, 128 (1968). The Confrontation Clause guarantees a criminal defendant the right to "be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Supreme Court held in *Bruton* that a defendant's Confrontation Clause rights were violated by the admission of a non-testifying co-defendant's confession that directly implicated the defendant in the criminal act, even though the trial court issued a limiting instruction to the jury." *United States v. Powell*, 732 F.3d 361, 376 (5th Cir. 2013) *cert. denied,* 134 S. Ct. 1326 (U.S. Feb. 24, 2014) (citing *Bruton*, 391 U.S. at 128). The Supreme Court later clarified that a non-testifying co-defendant's confession was constitutionally admissible when it was redacted to exclude references to the defendant, and the trial court gave a limiting instruction to the jury. *Id.* (citing *Richardson v. March*, 481 U.S. 200, 203 (1987)). Even admission of redacted statements, however, violate *Bruton* when "it is obvious from consideration of the confession as a whole that [the statement refers] to the defendant[.]" *United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999).

Mr. Murphy requests that the Court determine before trial whether a *Bruton* problem exists and the extent of it so that Mr. Murphy's rights to confrontation and a fair trial can be protected at trial. Before ruling on a defendant's motion to sever, the court may order the Government "to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." FED. R. CRIM. P. 14(b) & advisory committee notes (1966). Mr. Murphy believes co-defendants have spoken to FBI agents, *see* Count 6, but he is not aware of any specific statements made by the co-defendants. Accordingly, Mr. Murphy is requesting pursuant to contemporaneously filed motion that the court conduct such an inspection.

If the Government at trial intends to introduce into evidence any statements made to agents by Defendants Anderson, Tanner, Tegmeyer, Thomas or Love, Mr. Murphy requests a separate trial in the interests of justice.

2 *Undue Prejudice by Jointly Trying the Defendants and Fraud Counts and Counts 4, 5 and 6*

Second, Mr. Murphy moves for severance based on the prejudice of the evidence that will be introduced by virtue of the joint trial with the co-defendants. The remaining defendants in the fraud counts are also charged in either the retaliation count of the indictment or for making false statements to the government. The evidence presented at trial on Counts 4 through 6—and particularly Count 4, the retaliation charge—will be very inflammatory. There will be allegations of lying in order to have teachers fired. Of falsifying records to have teachers fired. Of recruiting students to file false police reports to have teachers fired. All done, allegedly, to harm the teachers that were cooperating with the FBI. Mr. Murphy is not accused of such conduct. Indeed, all of the aforementioned conduct occurred after Mr. Murphy had been employed by another school district for at least two years. Mr. Murphy would be so prejudiced by the evidence presented by the Government on Counts 4 through 6, that a jury would not be able to determine the culpability of Mr. Murphy on the fraud counts fairly, impartially and solely on the basis of evidence relevant to him.

This is not a simple case in which the jury will easily compartmentalize evidence. *See United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011) ("[T]he question of prejudice hinges upon whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." (internal quotation marks omitted). The Government has been investigating this case for years and anticipates it will last two to three

weeks. The trial will involve complex issues and require the presentation of numerous witnesses and voluminous exhibits. The jury will be required to understand education rules and regulations and the alleged steps defendants took to bypass those rules and regulations. The jury will have to assess the guilt of each defendant on those counts. Introduction of retaliation evidence and the false statements will conflate the issues and is unduly prejudicial to Mr. Murphy who is not accused of those acts. Indeed, evidence of the retaliation and false statements would not be admissible in a trial solely involving Mr. Murphy. *See* FED. R. EVID. 401-204 (limiting evidence to that which has a tendency to make a material fact more or less probable).

Furthermore, the evidence related to Counts 4 through 6 is irrelevant to proving Counts 1 through 3 against the other defendants named in those counts. Thus, even if the Court does not decide to sever Mr. Murphy's trial from the trial of other co-defendants based on his Confrontation Clause right or the reasons described above, the Court could still cure the prejudice to Mr. Murphy by convening a separate trial on Counts 4 through 6. The evidence on Counts 4 through 6 would not be duplicative of the fraud counts, thus separate trials will not waste judicial resources.[4]

Lastly, Mr. Murphy also requests that the Court determine before trial whether the co-defendants and counts should be severed due to other co-defendants' criminal convictions or other acts that the Government intends to introduce under Rule 404(b) or as impeachment evidence if that co-defendant testifies. Depending on the nature of that evidence, severance may be required in the interest of justice if the Court could not reasonably expect the jury to determine the culpability of Mr. Murphy fairly, impartially and solely on the basis of evidence relevant to him

---

[4] If the Court was concerned that some evidence presented on the fraud counts would be necessary for Counts 4 through 6, the Court could bifurcate the trial under its supervisory power, having the same jury convened for the trial on Counts 4 through 6 after the trial concludes on Counts 1 through 3. *See* FED. R. EVID. 611; *Geders v. United States*, 425 U.S. 80, 86-89 (1976) (describing the court's broad power to control the progress and shape of the trial).

to the exclusion of the other act evidence introduced against other co-defendants. *See Crawford*, 581 F.2d at 491.

**IV.    CONCLUSION**

WHEREFORE, for the foregoing reasons, Mr. Murphy requests that the Court sever Counts 4 through 6 from Counts 1 through 3 and also sever his trial from that of his co-defendants.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender


　　　　　　/S/
DARREN L. LIGON
Supervisory Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 6th day of June, 2016, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA Debra P. Kanof, Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.

                                               /S/
                                       DARREN L. LIGON
                                       *Attorney for Defendant*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § | NO. EP-16-CR-0693-DB(1) |
| DAMON MURPHY | § § § § | |

### ORDER GRANTING DEFENDANT MURPHY'S MOTION FOR SEVERANCE

On this date came on to be considered the Defendant Murphy's Motion for Severance, and the Court having considered the premises, is of the opinion that the Motion should be GRANTED.

_____IT IS THEREFORE ORDERED that Counts 4, 5 and 6 be dismissed without prejudice.

_____IT IS THEREFORE ORDERED that Count 4, 5 and 6 be severed from Counts 1, 2 and 3 for purposes of trial.

_____IT IS THEREFORE ORDERED that Defendant Damon Murphy be tried separately from his Co-Defendants.

SO ORDERED on this the _____ day of _____, 2016.

_____
DAVID BRIONES
Senior United States District Judge