IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CRIMINAL NO. EP-16-CR-0693-DB |
| | § | |
| DAMON MURPHY (1); | § | |
| JAMES ANDERSON (2); | § | |
| JOHN TANNER(3), | § | |
| MARK PHILLIP TEGMEYER(4), | § | |
| DIANE THOMAS (5) and | § | |
| NANCY LOVE (6), | § § | |
| Defendants. | § § | |

**GOVERNMENT'S MOTION TO DESIGNATE CASE AS
COMPLEX AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, respectfully moves this Court to designate the above-captioned case as "complex" under 18 U.S.C. § 3161(h)(7)(B)(ii), and further moves this Court to exclude time in the interest of justice, pursuant to 18 U.S.C. § 3161(h)(7), for the reasons explained below.

**FACTS**

On April 20, 2016, a grand jury sitting in the Western District of Texas, El Paso Division, returned a 6-count Indictment against **DAMON MURPHY; JAMES ANDERSON; JOHN TANNER, MARK PHILLIP TEGMEYER, DIANE THOMAS** and **NANCY LOVE.**

The seventeen page speaking Indictment charges defendants MURPHY, ANDERSON, TANNER AND TEGMEYER with one count of conspiracy to defraud the United States Government, one count of conspiracy to commit mail fraud, and one count of mail fraud and

aiding and abetting mail fraud. The Indictment further charges Tanner, Tegmeyer, Thomas and Love with one count of retaliation against a witness; charges Love in cone count of grand jury perjury and charges Anderson with making false statements to a U.S. Government Agency.

As reflected in the Indictment, which covers conduct occurring over at least seven years, the case involves complex fraud schemes that relate to numerous federal and state statutes and regulations, and to state and local education policies.  The Indictment alleges, in part, that between February 2006 and September 2013, the defendants participated in an illegal scheme to knowingly attempt to devise and devise a scheme and artifice to defraud the United States Department of Education (DOE), the Texas Education Agency (TEA) and the El Paso Independent School District (EPISD), and to knowingly attempt to devise and devise a scheme and artifice to knowingly obtain money and property by means of material false and fraudulent pretenses, representations and promises both by affirmative acts and by deceitful concealment of material facts, in that the defendants conspired to violate the No Child Left Behind Act (NCLB) portion of the federal Elementary and Secondary Education Act (ESEA) in order to make the EPISD campuses in the Priority School Division (PSD) appear to meet NCLB accountability status by artificially inflating the EPISD state and federal accountability scores by providing materially false, fictitious and fraudulent information to the TEA and the DOE regarding the grade classification, academic performance, and demographic make-up of students in order to mislead the United States government and the TEA concerning the manner in which the educational needs of the students were being met by EPISD.

The scheme included fraudulent activity directed by the defendants and others at up to fifteen EPISD school campuses over a period of approximately seven years and included numerous complex methods of disguising and falsifying student's grades, scores, classifications

and attendance.

One of the complexities of the case lies in the requisites of the NCLB federal statute which mandates that a school campus must meet Adequate Yearly Progress (AYP). The requirements vary from state to state as NCLB allows each state's education agency to determine how measures for at-risk students will be addressed. Texas has its own peculiar way of determining AYP which is extremely complex in and of itself. As alleged in the Indictment, at EPISD, AYP was manipulated through graduation rate and by the manipulation of subgroups of students which entails the manipulation of several complex variables within that context.

AYP is a standard that encompasses a morass of criteria that is calculated using individual state guidelines. A school's failure to meet federal APY for five years in a row results in drastic consequences to the school and the district. (See Introduction to Count One of the Indictment, ECF 1)

Graduation rate is based upon class cohort and the ability to finish school together as a cohort. At EPISD campuses, cohorts were intentionally manipulated by the withholding of credits, the awarding of improperly earned credits, the changing of grades, changing the teacher of record, altering attendance, coercing withdrawals, manipulating leaver codes, improper credit recovery, and circumventing Texas Education Code and EPISD's own internal policies. Each of these variables, are a complex discussion in addition to the applicable regulations and statutes.

With regard to the credit recovery methods employed at EPISD, credits could be earned in a variety of manners, including credit recovery, on line classes, and retaking courses but students must master at least 70% of the TEKS (Texas Education Knowledge and Skills) for each designated course. TEKS are specific to each course. Certain credit recovery methods employed by the defendants could not satisfy the State's requirement that TEKS be met, and thus many of the

credits awarded to students to make AYP, by the defendants or at their direction, were false credits. These false credits were awarded in a variety of subjects that require knowledge of the TEKS for each of the subjects to determine whether the credit recovery method employed by the defendants, or at their direction, was legitimate.

AYP was also falsified by the manipulation of various sub-populations of at risk students such as Limited English Proficiency (LEP), African American and Special Education (SPED) groups. Again, State law (unique to Texas) and district policies dictate much of how this can be done. Statistical evidence was provided in discovery showing historical trends and anomalies within campuses as to demographic populations of at-risk students.

As detailed in the Indictment, the alleged violations were accomplished by falsifying information in the Public Education Information Management System (PEIMS), a statewide computer software program used to track certain student identifiers.

In addition, this case involves voluminous discovery. There are over 20 gigabytes of information scanned and provided as discovery, including EPISD policies, a Department of Education audit with voluminous exhibits, an external audit by Weaver and Associates (with exhibits), evidence from TEA administrative hearings and lengthy transcripts of those hearings and depositions, human resources investigations, employment hearings and EPISD's internal audits. These audits are complicated because there are numerous variations of the same audit in which improper findings are couched within proper findings. Additionally, the internal correspondence (letters, memos and emails) and educational documentation accumulated from a multitude of witnesses in this case has been provided to the defendants. The government stamped most of the documents provided in discovery with "Bates" numbers, resulting in more than 75,000 pages of stamped documents.

## **ARGUMENT**

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.,* requires that the "trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act, however, excludes from the calculation of this 70-day period certain specified delays, including:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). The Act further states that "[t]he factors, among others, which a judge shall consider in determining whether to grant" such as a continuance are:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> \* \* \*
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), . . . would deny counsel for the defendant or the attorney for the Government the reasonable time

> necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i), (ii) & (iv).

Here, the ends of justice outweigh the best interest of the public and the defendant in a speedy trial for a number of reasons. First, this case is "unusual and complex" in light of, *inter alia*, the sophisticated illegal remuneration, fraud, and money laundering schemes alleged in the Indictment and the number of defendants (four individuals and two companies). Thus, it is unreasonable to expect "adequate preparation for pretrial proceedings or for the trial itself within the time limits established" by the Speedy Trial Act.

In addition, the sheer volume of discovery in this case will require further time for the Defendants to review the evidence and to prepare for trial. An analysis of the discovery, its admissibility and its impact on the case as a whole will take more than the seventy days allotted under the Speedy Trial Act.

## CONCLUSION

Based upon the foregoing, the Government respectfully requests that the Court designate this case as "complex" under 18 U.S.C. § 3161(h)(7)(B)(ii), and further requests that the Court exclude time in the interest of justice, pursuant to 18 U.S.C. § 3161(h)(7).

Respectfully submitted,

RICHARD L. DURBIN, JR.
United States Attorney for the
Western District of Texas

By:    /s/
Debra P. Kanof
Assistant U.S. Attorney
(Texas Bar No. 11093600)
U.S. Attorney Office
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
(915) 534-6884 (office)
(915) 534-3461 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the June 6, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Darren L. Ligon, Attorney for Damon Murphy
700 E. San Antonio, Suite D-401
El Paso, TX 79901
Email: Darren_Ligon@fd.org

Robert J. Perez, Attorney for James Anderson
221 N. Kansas, Suite 1103
El Paso, TX 79901
Email: rjperezlaw@yahoo.com

James O. Darnell, Attorney for John Tanner
310 N. Mesa St., Suite 212
El Paso, TX 79901
Email: jdarnell@jdarnell.com

Luis E. Islas, Attorney for Mark Phillip Tegmeyer
909 E. Rio Grande
El Paso, TX 79902
Email: luiseislas48@hotmail.com

Sherilyn Ann Bunn, Attorney for Diane Thomas
P.O. Box 942
El Paso, TX 79946
Email: sbunn@f-jlaw.com

Mary Stillinger, Attorney for Nancy Love
4911 Alameda
El Paso, Texas 79905
Email: stillingerlaw@sbcglobal.net

/s/
Debra P. Kanof
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CRIMINAL NO. EP-16-CR-0693-DB |
| DAMON MURPHY (1); JAMES ANDERSON (2); JOHN TANNER(3), MARK PHILLIP TEGMEYER(4), DIANE THOMAS (5) and NANCY LOVE (6), | § § § § § § § § | |
| Defendants. | § § | |

**ORDER DESIGNATING CASE AS COMPLEX AND
EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT**

Before the Court is the Government's motion to designate this case as "complex" under 18 U.S.C. § 3161(h)(7)(B)(ii), and to exclude time in the interest of justice, pursuant to 18 U.S.C. § 3161(h)(7). After considering the same, the Court is of the opinion that the motion is meritorious.

THE COURT HEREBY FINDS that the ends of justice will be served by granting the continuance and that the ends of justice outweigh the interests of the public and the defendant in a speedy trial, based upon the following factors:

(1) The issues and facts in this case are unusual and complex, and it is unreasonable to expect adequate preparation for pretrial proceedings and the trial itself within the time limits established by the Speedy Trial Act; and

(2) Because of the volume of discovery in this case, adherence to the time limits prescribed in the Speedy Trial Act will deny counsel for the Defendants and the

Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence by both parties.

IT IS, THEREFORE, ORDERED that the present case be declared as complex for purposes of 18 U.S.C. § 3161(h)(7)(B)(ii), and IT IS FURTHER

ORDERED that the time period between the filing of the Government's instant motion and the date set for docket call, March 7, 2014, is excluded for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), in the interests of justice.

Signed this _____ day of June, 2016.

_____
HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE