UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | NO. EP-16-CR-0693-DB(1) |
| | § | |
| DAMON MURPHY | § | |
| | § | |

**DEFENDANT MURPHY'S REPLY TO GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**

TO THE HONORABLE DAVID BRIONES, SENIOR DISTRICT JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

COMES NOW Defendant DAMON MURPHY, by and through counsel, and replies to the Government's Response and Opposition to his Motion for a Bill of Particulars (ECF No.143.) Mr. Murphy respectfully replies as follows:

**1. Sufficiency of the Indictment Does Not Negate Need for a Bill of Particulars.**

The Government cites extensively law pertaining to the sufficiency of an indictment. (ECF No. 169 at 4-5.) Mr. Murphy did not seek dismissal of the indictment for insufficiency in the instant Motion. *See* (ECF No. 143). Rather, Mr. Murphy sought a bill of particulars "with sufficient precision to enable him to prepare his defense" and avoid, or minimize the danger of surprise at trial. (ECF No. 1) (quoting *United States v. Martinez*, 466 F.2d 679, 686 (5th Cir. 1972)). A bill of particulars also would enable Mr. Murphy to assert double jeopardy in case of subsequent prosecution. *See United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). Even if the indictment was insufficient, that could not be cured by a bill of particulars. *Russell v. United States*, 369 U.S. 749, 770 (1962) ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment.").

Thus, the Government's argument that the Indictment is sufficient and conforms to "minimal constitutional standards" is largely a strawman and irrelevant to Mr. Murphy's request for a bill of particulars.[1]  *See* (ECF No. 169 at 4) (quoting *United States v. Webb*, 747 F.2d 278, 284 (5th Cir. 1984)).  The relevant inquiry for a bill of particulars is whether additional information is necessary so that the defense can avoid or minimize surprise at trial, prepare its defense, and guard against double jeopardy.  *See Martinez*, 466 F.2d at 686.

## 2. The Court Should Order the Government to Specify the Legitimate Function of the U.S. Department of Education that the Alleged Conspiracy Conspired to Defeat.

Ill-defined charges leave "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."[2]  *Russell v. United States*, 369 U.S. 749, 768 (1962).  For Count 1, Mr. Murphy requested disclosure of the "legitimate function" of the U.S. Department of Education ("DOE"), since an element of the charged conspiracy is to defeat the DOE's legitimate function.  (ECF No. 143 at 3-5.)  The Government responded that the DOE's legitimate function is defined in the Indictment and further revealed in the DOE Office of the Inspector General's audit report.[3]  (ECF No. 169 at 9.)  The Indictment defines DOE as a federal agency that "promot[es] student achievement and preparation

---

[1] The Government's attempt to discredit Mr. Murphy's reliance on *Glasser* reveals its conflation of the indictment's sufficiency and the request for a bill of particulars. (ECF No. 169 at 7).  In *Glasser*, the Supreme Court found that the indictment was sufficient. *Glasser v. United States*, 315 U.S. 60, 66 (1942). However, the defendants in *Glasser* requested, and received, a bill of particulars that specified many overt acts.  *Id.*; *see United States v. Glasser*, 116 F.2d 690, 696 (7th Cir. 1940), *modified,* 315 U.S. 60 (1942). Mr. Murphy cited *Glasser* for the proposition that, while indictment can be sufficient without "particularity of time, place, circumstances," or "the manner and means" of effecting the charged crime, such "specificity of details falls . . . within the scope of a bill of particulars[.]"  *Glasser*, 315 U.S. at 66.

[2] The Government omitted in its discussion that an indictment that parrots the statute is insufficient if the "factual information that is *not* alleged in the indictment goes to the very *core of criminality* under the statute."  *United States v. Kay*, 359 F.3d 738, 757 (5th Cir. 2004) (emphasis in original); *see Hamling v. United States*, 418 U.S. 87, 118 (1974).

[3] The audit report is available at on the DOE's website at https://www2.ed.gov/about/offices/list/oig/auditreports/fy2013/a06l0001.pdf

for global competitiveness by fostering educational excellence and ensuring equal access." (ECF No. 1 at 3.) This includes "enforc[ing] federal laws prohibiting discrimination in programs that receive federal funding," such as the NCLB. (ECF No. 169 at 7–8.) The 40-page audit report does not define the DOE's legitimate function, although it perhaps is an example of a legitimate function to assess compliance with statutory requirements. The Government's Response thus suggests that Mr. Murphy is accused of devising a scheme to impair the DOE's ability to promote student achievement, foster educational excellence, and ensure equal access. That, however, is not specified in the Indictment or even clear from the Government's Response. Nor is it clear by what means that function was allegedly impaired.

The Court should order the Government to specify the particular government function alleged impaired by the scheme. "[C]ases based on section 371 'conspiracy to defraud'" indictments involving intangible governmental rights ordinarily have described clear interference and active contact with governmental agency functions." *United States v. Haga*, 821 F.2d 1036, 1040 & n.7 (5th Cir. 1987) (collecting cases).[4] The Fifth Circuit Pattern Jury Instructions for § 371 include a description of the function that was thwarted. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.15B (2015) (describing sample means as "defeating the lawful function of the

---

[4] *See, e.g.*, *Haas v. Henkel*, 216 U.S. 462 (1910) (describing indictment alleging two conspiracies: (1) to bribe a federal employee to cause the Department of Agriculture to issue false cotton crop reports, and (2) to defraud the United States by inducing the employee to give advance cotton crop information); *United States v. Martin*, 332 F.3d 827, 835 (5th Cir. 2003) (indictment and jury instructions clarified conspiracy to defraud the IRS was by means "to frustrate the collection of taxes due and to disguise and conceal the scheme"); *United States v. Allred*, 867 F.2d 856, 867 (5th Cir. 1989) (indictment alleged defrauding United States Department of Defense and Department of the Air Force "by obtaining purchase orders and contracts from the United States of America by means of false and fraudulent pretenses, representations, and promises"); *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980) (indictment named the agency and described the functions interfered with); *United States v. Porter*, 591 F.2d 1048, 1055 (5th Cir. 1979) (quoting indictment as conspiracy to defraud "the Department of Health, Education, and Welfare, of its right to have the Medicare program conducted honestly, fairly and free from deceit, craft, trickery, corruption, dishonesty, fraud and kickbacks").

Internal Revenue Service in the ascertainment, assessment or collection of income taxes due"). The Fifth Circuit has not addressed "whether a 'conspiracy to defraud' indictment must specifically allege that the conspiracy had as its object interfering with a particular, specific governmental function[.]" *Haga*, 821 F.2d at 1041. But Mr. Murphy is not asking the Court to dismiss the Indictment. He is simply asking for the specific legitimate function he allegedly was defeating—something that indictments typically provide. *See id.* at 1040. The DOE is a federal agency with many mandates and functions. While the Indictment may reflect "the essence of the alleged offense" and thus withstand a motion to dismiss, *id.*, it does not provide sufficient notice to enable Mr. Murphy to prepare his defense, avoid surprise at trial, and invoke double jeopardy protections.

###    3. The Court Should Order the Government to Disclose Others Known to the Grand Jury who Joined in the Conspiracy but Were Not Indicted.

"Informing the defendant of the names of alleged unindicted coconspirators has been held a proper use of a bill of particulars."[5] *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977) (finding, in that case, no specific prejudice that warranted excluding testimony of coconspirators who were not disclosed in a bill of particulars). The Government argues that disclosure of known conspirators is unnecessary because it has provided more than 20 gigabytes of information in discovery. (ECF No. 169 at 9.) The volume of the discovery, however, cuts in favor of a bill of particulars delineating the unindicted coconspirators. *See United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E.*

---

[5] As the Government pointed out, the Fifth Circuit affirmed a trial court's refusal to grant a bill of particulars in which the defendants sought names of coconspirators. (ECF No. 169 at 8 (citing *Wilkins v. United States*, 376 F.2d 552, 562-63 (5th Cir. 1967)). The Government failed to mention that, at "the hearing on the motion, Government counsel verbally stipulated that there were no other known conspirators." *Wilkins*, 376 F.2d at 562. In other words, the Government provided the particulars—that it knew of no other conspirators. *See id.* (affirming denial of request for "the names of those conspired against").

*Africa*, 552 F.3d 93 (2d Cir. 2008) ("[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."). As explained by another district court, a "defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met," if "there are a large number of co-conspirators and a long-running conspiracy[.]" *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) (granting bill of particulars in Medicare fraud case). In such circumstances, "[i]f the Government has failed to provide adequate notice of the particulars, or if the discovery has been voluminous, identification of known unindicted co-conspirators will help a defendant focus his investigation and prepare for trial." *Id.* at 572-73 (requiring "the Government to provide defendants with the names of any known unindicted co-conspirators").

The Indictment names six defendants in total, and four of those in Counts 1 through 3. (ECF No. 1 at 13.) The conspiracy to defraud, Count 1, spanned a period of 7.5 years—from February 1, 2006, to September 30, 2013. (ECF No. 1 at 8.) Mr. Murphy was only employed by the EPSID for four of those years. Furthermore, the conspiracy involved actions at different schools within the EPISD. Given the breadth of the conspiracy and Mr. Murphy's limited engagement at the EPISD, there is a real likelihood that Mr. Murphy may not know all of the coconspirators known to the Government. "Providing the names of known unindicted co-conspirators therefore will prevent unfair surprise." *Nachamie*, 91 F. Supp. 2d at 573 (noting eight indicted coconspirators, a conspiracy lasting over three years, and over 200,000 pages of discovery); *see also United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (requiring disclosure of coconspirators in a § 371 conspiracy to impede the Federal Election Commission since there were many, some may have not dealt with the defendant, and the conspiracy lasted 3.5 years);

*United States v. Strawberry*, 892 F. Supp. 519, 527 (S.D.N.Y. 1995) (requiring disclosure of the coconspirators the Government will use at trial in a tax evasion case).

Disclosure of known, unindicted coconspirators will avoid, or at least minimize, unfair surprise at trial and allow Mr. Murphy to properly investigate and defend his case. A simple list of names will not amount to a "detailed disclosure of the government's evidence prior to trial." *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978). Furthermore, Mr. Murphy has no reason to believe disclosing the names of the unindicted coconspirators will endanger them or compromise the Government's long-lasting investigation. *See Nachamie*, 91 F. Supp. 2d at 573.

**4. The Court Should Order the Government to Disclose any Alleged Benefits Gained by Mr. Murphy, including Money and Property Obtained from the Alleged Offenses.**

The Government responded that disclosure of benefits gained by Mr. Murphy is unnecessary because it is not an element of the charged offenses. (ECF No. 169 at 8.) It then, again, stated that the indictment is sufficient, ignoring that the purpose of the bill of particulars supplements an already sufficient indictment. *See Martinez*, 466 F.2d at 686.

Count 1 simply alleges that Mr. Murphy conspired to defraud the United States by impairing, obstructing, and defeating the legitimate function of the DOE. (ECF No. 1 at 5.) "To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *Hammerschmidt v. United States,* 265 U.S. 182, 188 (1924). Mr. Murphy requests a bill of particulars specifying any alleged gains, or intended gains, to him, including money and property.[6] *See* (ECF No. 143 at 3). Alternatively,

---

[6] Framing the request as "gains" was, perhaps, confusing because it did not mirror the statutory terms. Mr. Murphy rephrases the request as disclosure of the alleged money or property obtained from the DOE, or intended to be obtained from the DOE, by the alleged scheme.

given that the Government's allegations in the Indictment do not include cheating the DOE out of money or property and its Response that Mr. Murphy's request for any benefits gained by him is irrelevant, the Government's theory at trial should be limited to impairing, obstructing, and defeating the legitimate function of the DOE. *See Haskins*, 345 F.2d at 114. Any argument or evidence that Mr. Murphy conspired to cheat the DOE out of property or money should be excluded as irrelevant and outside the scope of the Indictment as clarified by the Government.

Counts 2 and 3 allege mail fraud in two alternative theories: 1) devising a scheme and artifice to defraud the DOE, TEA, and EPISD; and 2) devising a scheme to obtain money and property by means of material false and fraudulent pretenses, representations, and promises. (ECF No. 1 at 8-13.) The Government's Response did not address the second theory—obtaining money and property by fraudulent means. *See* (ECF No. 169 at 8). Yet, the Indictment suggests that certain individuals may have received bonuses for yearly progress reports. *See* (ECF No. 1 at 4 ¶ 24) (defining statutory provisions authorizing institutional and individual awards). None of the overt acts specify any such awards. *See* (ECF No. 1 at 5-11). Nor do any of the overt acts listed in Count 2 identify the money or property that the alleged scheme was devised to obtain. *See* (ECF No. 1 at 9-11). Such money, property, or bonuses are not readily apparent from the discovery either.

Mr. Murphy requests that the Court order the Government to disclose the nature of the alleged gains, specifically money or property, received by Mr. Murphy as well as any intended gains to him and losses to the DOE, TEA, and EPISD. This information is necessary to prepare his defense against the second theory of mail fraud. Alternatively, since the Government did not address the second theory of mail fraud in its Response, Mr. Murphy asks the Court to limit the

Government's theory at trial for Counts 2 and 3 to devising a scheme to defraud the DOE, TEA, and EPISD.

**5.   The Court Should Order the Government to Disclose Provisions of the NCLB Act Allegedly Violated.**

The Indictment provides many definitions and a few specific citations to the Texas Education Code, the Texas Administrative Code and the Elementary and Secondary Education Act (ESEA).[7]  (ECF No. 1 at 4.)  The Indictment also details some overt acts.  (ECF No. at 5-8.)  The Government has provided documents in discovery such as the OIG audit report.  Nevertheless, the complexity of the regulatory framework and of the conspiracy necessitate a bill of particulars not only to avoid surprise but to properly define the scope of the allegations for the purposes of double jeopardy.

The prospect of a subsequent prosecution for a similar fraud charge is not unheard of.  For instance, the Fifth Circuit found no double jeopardy violation for health care fraud conspiracies that overlapped in time, place, personnel, and statutory charge since the Government sought to punish different activity in each indictment.  *United States v. Njoku*, 737 F.3d 55, 72 (5th Cir. 2013).  One of the defendants was acquitted of a conspiracy to commit health care fraud for an indictment that focused on her activity as a recruiter.  *Id.* at 71.  She was found guilty in a second health care fraud case that focused on her falsification of nursing notes and medical certifications. *Id.* The Fifth Circuit also found that her first acquittal did not bar prosecution on whether she willfully received kickbacks because the first jury could have based the acquittal either on her not

---

[7] The cited sections, ESEA §§ 1116 and 1117, were in place at the time of the alleged offenses, but they have since been repealed.  *See* Every Student Succeeds Act § 1000, Pub. L. No. 114-95, Dec. 10, 2015, 129 Stat. 1802.  The Indictment cites § 1116(d)(2), but no such subsection exists.  *See* No Child Left Behind Act of 2001 (NCLB) § 1116, Pub. L. No. 107-110, Jan. 8, 2002, 115 Stat. 1425 (incorporated at 20 U.S.C. § 6316).

knowing that the paid referrals were illegal or on her not intending to further the unlawful purpose as charged in the indictment. *Id.* at 72-73. Since the jury did not have to *necessarily* find that she did not know the referrals were illegal, she was not twice put in jeopardy. *Id.* at 73.

Thus, for purposes of being able to invoke double jeopardy in any future prosecution, a bill of particulars is necessary to delineate the particular violations—both actions and regulation, rule, or statute violated—at issue in the instant Indictment. Otherwise, any and all violations possibly supported by the discovery should be barred from subsequent prosecution.

## 6. The Court Should Order the Government to Identify Mr. Murphy's Fraudulent Statements and Actions.

Contrary to the Government's assertion (ECF No. 169 at 10-11), the request for disclosure of Mr. Murphy's fraudulent statements and actions is not a discovery request. The Indictment alleges that Mr. Murphy devised a scheme to obtain money and property by means of material false and fraudulent pretenses, representations, and promises. (ECF No. 1 at 8, 12.) The Government's Response did not limit the fraudulent acts to those overt acts alleged in the Indictment. *See* (ECF No. 169 at 10-11). Given the voluminous discovery, a bill of particulars that specifies any fraudulent statements and actions that the Government intends to use at trial outside of the overt acts listed in the Indictment is necessary to enable Mr. Murphy to prepare for trial, avoid surprise, and claim protection of double jeopardy.

## 7. Government Responded in Part to Mr. Murphy's Request for Particulars as to Victims.

Mr. Murphy requested identification of the alleged victims for Counts 1 through 3. (ECF No. 143 at 3-5.) The Government responded that the victims are listed in the Indictment, specifying for Counts 2 and 3 the U.S. Department of Education (DOE), the Texas Education Agency, and the El Paso Independent School District. (ECF No. 169 at 7-8.) Accordingly, the

Government has specified, and thereby limited Counts 2 and 3 of the instant case to, these three victims. *See United States v. Horton*, 526 F.2d 884, 887 (5th Cir. 1976) (fatal variance from bill of particulars when defendant "taken by surprise by reason of the variance and . . . such surprise prejudiced the preparation of his defense"); *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965) ("When a bill of particulars has been furnished, the government is strictly limited to the particulars which it has specified, i.e., the bill limits the scope of the government's proof at the trial."); *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963) (a variance between the proof and the bill of particulars is grounds for reversal if the appellant is prejudiced by the variance).

The Government did not specify the victim of Count 1. *See* (ECF No. 169 at 2, 7). Count 1 does not state which U.S. agency was allegedly defrauded, although it provides that the defendants allegedly conspired to defeat the legitimate function of the DOE. (ECF No. 1 at 5.) Perhaps the Government's intention was to identify the DOE as the victim of Count 1. Or perhaps it was the Government's intention to identify the DOE, TEA, and EPISD. *See* (ECF No. 169 at 7-8). Mr. Murphy requests a bill of particulars identifying the victim of Count 1.

### 8. Government Responded to Request for Locations.

The Government responded to Mr. Murphy's request for locations other than the Western District of Texas involved in Counts 1 through 3 by stating that other locations include the District of Columbia; Austin, Texas; Iowa City, Iowa; and other locations identified in the discovery. (ECF No. 10.) Accordingly, for the purposes of trial and double jeopardy, any and all locations identified in the discovery are encompassed by the instant prosecution. *See Horton*, 526 F.2d at 887.

WHEREFORE, Mr. Murphy prays the Court grant his Motion for a Bill of Particulars and any further such relief the Court deems necessary.

Respectfully Submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender


/S/
DARREN L. LIGON
Supervisory Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2016, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: AUSA Debra P. Kanof, Office of the U.S. Attorney, Richard C. White Building, 700 E. San Antonio, Suite 200, El Paso, TX 79901.


/S/
DARREN L. LIGON
*Attorney for Defendant*

11